## Maxwell's Estate (No. 1).

*Wills—Distribution—Trust and trustees—Estate per autre vie—Income.*

Where a testatrix bequeaths stock of a corporation to trustees "to keep and to hold for and during the lifetime of my children, and the survivor of them, and to divide equally among my said children share and share alike (the issue of any deceased child to take its parent's share) all dividends from said stock, and upon the death of my last surviving child to sell my stock in said company, and to divide the proceeds among my grandchildren per stirpes," each child takes an estate in the income per autre vie, and if a child dies without issue him surviving, his personal representative is entitled to share in the income until the trust expires.

Argued Nov. 24, 1916.   Appeal, No. 281, Oct. T., 1916, by Charles T. Maxwell, from decree of O. C. Philadelphia Co., July T., 1908, No. 368, dismissing exceptions to adjudication in Estate of Elizabeth Maxwell, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Exceptions to adjudication.

From the record it appeared that testatrix died July 8, 1908, leaving a will, duly probated, the second clause of which is quoted in the opinion of the Superior Court.

The testatrix left surviving her eight children: Charles T. Maxwell, John S. Maxwell, Helen M. Browne, Jennie H. Fink, W. G. Maxwell, Stuart Maxwell, E. J. Maxwell, Jessie May Bowman; and one grandchild,

Frances M. Moore, daughter of a deceased son, James C. Maxwell.

At the audit of the executors' account, the auditing judge in his adjudication filed January 12, 1910, found that Frances M. Moore was entitled to share in the distribution of the income. By this adjudication, twenty-five shares of the said stock were awarded to the accountants in trust.

The accountants' first account as trustees was filed because of the death of E. J. Maxwell on March 13, 1915, leaving issue, one child, John H. Maxwell, and the death of W. G. Maxwell on May 15, 1915, unmarried and without issue.

The only question at issue is as to the disposition of W. G. Maxwell's share in the income from the trust estate. The auditing judge held that after the death of W. G. Maxwell, his personal representative was entitled to receive the share of the income which he would have taken if living.

The appellant filed exceptions to this adjudication, and the Orphans' Court in an opinion filed July 10, 1916, sustained the auditing judge and dismissed the exceptions.

*Error assigned* was in dismissing exceptions to adjudication.

*J. W. McWilliams,* with him *Tustin and Wesley,* for appellant.—W. G. Maxwell took a vested interest in the income, but for his life only and not for the life of his last surviving brother or sister. Therefore, on his death without issue, his share fell in and his administrator is not entitled to any income subsequently accruing: Rowland's Est., 141 Pa. 553; Eyre's Est., 205 Pa. 561; Huddy's Est., 63 Pa. Superior Ct. 34.

No printed brief for appellee.

OPINION BY HEAD, J., July 13, 1917:

The testatrix died July 8, 1908. She left to survive her eight children, among them William G. Maxwell who died May 15, 1915, intestate, unmarried and without issue. The single question raised by this appeal is the disposition after his death of the income bequeathed to him by the will of the testatrix in the second clause which we now quote. "I give and bequeath all the stock that I own in the Wilton Knitting Company to my executors hereinafter named, to keep and to hold for and during the lifetime of my children and the survivor of them and to divide equally among my said children share and share alike (the issue of any deceased child to take its parent's share) all dividends realized from said stock, and upon the death of my last surviving child I order and direct my executors or their successors to sell my stock in the said company and to divide the proceeds among my grandchildren per stirpes." The learned Orphans' Court adjudged the legacy to William vested immediately on his mother's death and that it was not a gift merely for his own life but per autre vie, the other life, measuring the duration of the gift, being that of the survivor of her children. The share of the fund for distribution that would have unquestionably been his, had he then been living, was therefore then awarded to his personal representatives. If the doctrine enunciated in Little's App., 81 Pa. 190, be still an active principle to guide us in the determination of such questions, the decree of the court below was clearly right. That we must regard it as such principle appears to be clear to us. It was reaffirmed in Ritter's Est., 190 Pa. 105, where the Supreme Court adopted the auditor's report confirmed by the Orphans' Court. In that case the doctrine of Little's Appeal was applied in disposing of the exact question then and here in controversy. We followed it in Hildebrant v. Hildebrant, 42 Pa. Superior Ct. 193; Dillin's Est., 47 Pa. Superior Ct. 158; Spang's Est., 49 Pa. Superior Ct. 314; Harned's Est., 54 Pa. Superior Ct. 50,

Now it is clear that the testatrix's gift was nominally and formally to the trustees she named. The duration of that gift thus made to them was unquestionably until the death of the last survivor of her children. But these trustees to whom the gift was directly made were not in any sense the beneficial owners of the property or the income to arise therefrom. In the absence of anything else and on the simplest of principles, the presumption would naturally arise that the beneficiaries, for whose use the trust was created, would continue in their beneficial ownership as long as the trust endured. We perceive no just ground for attributing to the testatrix the intent to make any preference between her children. It would have been so apparently easy to have declared that the income directed to be paid to each child should cease upon the death of that child without issue and then make a gift over of such share to the then surviving children. Nothing of this kind is apparent in the language she used. There is in terms no gift over to any one of the share of a child dying without issue. Unless there be an absolute rule of law to the contrary, it ought to follow from this that the gift to her son William was to continue to be beneficially his until the period named by the will when the corpus of the estate was to be divided between her grandchildren per stirpes. Those grandchildren were the only ones mentioned in the will to whom benefit should accrue by the death of any one of the first takers without issue.

There is nothing in the doctrine of the line of cases we have cited or in the conclusion we have here reached that in any way conflicts with our own recent case of Huddy's Est., 63 Pa. Superior Ct. 34, for the reason that in the will there under consideration, there was found internal evidence of the intent of the testatrix that the income directed to be paid by the trustee to the children of Eliza Fagan, should cease upon the death of any one of said children without issue. It will be only necessary to refer to a single clause controlling the payment of that income

63,·(1917).]      .      Opinion of the Court.

to warrant what we have just said: "It is my will that the income so to be paid to my niece and her children shall be paid quarterly, and shall not be subject to assignment, anticipation, or alienation, nor to the debts of any of the beneficiaries, but that the same shall be held to be applied for their maintenance and support." In the face of such a direction it would require a great deal of evidence to be drawn from other portions of the will to justify the conclusion that a gift of income on a spendthrift trust and expressly declared to be for the maintenance and support of the legatee, should continue after his death.

A more difficult question arises upon a comparison of the doctrine of Little's Appeal, supra, and the cases following it, with Rowland's Est., 141 Pa. 553. It is clear enough that in this last cited case there was no intention on the part of the court to either distinguish or overrule Little's Appeal. It is neither mentioned nor referred to. The conclusion becomes irresistible when in Ritter's Estate, supra, the old doctrine was reaffirmed. We must therefore assume that, in the construction of the will in Rowland's Estate, the Supreme Court found internal evidence within the four corners of the will that supported its determination the case was outside of the doctrine of Little's Appeal. If there be any antagonism between them, it is for the court that decided both cases and not for this court to determine how they are to be reconciled.

Upon a careful consideration of the entire question we are of opinion the learned Orphans' Court reached the correct conclusion.

The decree is affirmed.