## Craig's Estate.

*Wills—Trusts and trustees—Disposition of income—Survivorship.*
Where testatrix gives one-third of her estate to a trustee to pay the income to a daughter for life, and, after her death, to her children, but, if she shall die without children, to pay the net income to two of testatrix's sons in equal proportions for their lives, and, after their death, the principal to their children, and nothing is said as to the income from the date of the death of the sister without children to the death of the surviving brother, the income accruing after the death of one of the brothers without children, following the death of the sister without children, goes to the representatives of the deceased brother until the death of the other brother.

Petition for distribution. O. C. Carbon Co., A. & A. Docket 14, page 174, File No. 4550.

*J. C. & A. S. Loose,* for Bertha E. Craig, individually and as executrix of the will of Douglas Craig.

*William G. Thomas,* for Henry D. Craig.

*Ben Branch,* for Douglas Craig and Catharine Craig, children of Henry D. Craig.

BARBER, P. J., May 19, 1927.—Upon a petition presented March 8, 1926, by Bertha E. Craig, the court is asked, in this proceeding, without reference to an auditor, to award petitioner, as executrix under the will of Douglas Craig, deceased, or as his widow, a one-sixth share of income now in the hands of the Mauch Chunk Trust Company, trustee under the will of Belle D. Craig, late of Mauch Chunk, Carbon County, Pennsylvania, deceased, as per first account filed May 8, 1925, in the Orphans' Court of Carbon County, and, no exceptions having been filed thereto, confirmed absolutely July 8, 1925.

Belle D. Craig died Sept. 14, 1914, and by her will, bearing date Nov. 15, 1910, and codicil thereto revoking the appointment of one of the executors therein named, and appointing another in his place, dated Aug. 5, 1913, after a number of individual bequests, the testatrix devised and bequeathed the residue of her estate to the Mauch Chunk Trust Company, in trust, to collect the income thereof and pay the same over in quarter-yearly payments to her three children, Douglas Craig, Henry D. Craig and Gay Gordon Craig, and the surviving widows, if any, while remaining unmarried, of the two sons, during their natural lives, with remainders as to principal at the termination of the trust to their respective children, and cross-remainders in case of death without issue.

Gay Gordon Craig, a daughter, born Dec. 15, 1881, died July 12, 1913, a little over a year before her mother, leaving to survive her no children, but a husband, Carl Steinmaier. This husband is not named or interested in the will of the testatrix.

Douglas Craig, a son, born Oct. 14, 1867, married petitioner, Bertha Evelyn Craig, June 30, 1897, died Nov. 5, 1923, leaving to survive him no children, but his widow, Bertha Evelyn Craig, to whom, by his will, duly probated, he devised and bequeathed all his property, appointed her executrix thereof, and to whom letters testamentary upon his estate were granted.

Henry D. Craig, a son, born May 27, 1871, married Aug. 28, 1902, and is still living with his wife and two children, namely, Douglas Craig, born Aug. 30, 1903, and Catharine Craig, born Sept. 21, 1907.

The testatrix had another married daughter, Harriet Craig Wood, who died prior to the making of her mother's will in 1910, and to whose daughter tes-

tatrix gave a legacy of $5000, payable when she attained the age of twenty-one years.  This granddaughter is still living, having for her guardian the Easton Trust Company.

The trustee is directed by the testatrix to collect the interest and dividends upon the one-third of the residue of her estate "and pay the net income derived therefrom in quarter-yearly payments to my son, Douglas Craig, for and during the full term of his natural life, and from and immediately after his decease to pay said net income to his widow, should he leave a widow, for and during the full term of her natural life, or as long as she remains his widow, and from and immediately after the decease of both my said son, Douglas, and his said widow, or after the remarriage of said widow, should she survive him, to transfer, assign and pay over the said one-third of said residue . . . absolutely to the children of my said son, Douglas."

One-third of the residue is given upon a like trust for Henry D. Craig. One-third of said residue is given in trust to collect the interest and dividends thereon "and pay the net income derived therefrom in quarter-yearly payments unto my daughter, Gay Gordon Craig, for and during the full term of her natural life, for her sole and separate use, support and maintenance, and without any control of her husband, and her receipt to be the only discharge therefor, and from and immediately after her decease to transfer, assign and pay over the said one-third of said residue, or the bonds, stocks or securities in which the same may be invested, together with any income derived therefrom at that time in the hands of said trustee, absolutely to the children of my said daughter, Gay Gordon, then living and to the issue of any such children then deceased, so that, however, the issue of any deceased child of my said daughter, Gay Gordon, shall receive the share only of his, her or their deceased parent, but should my said daughter, Gay Gordon, die without issue, her surviving, then and in such case, to pay said net income derived from said one-third share of said residue in equal proportions, quarter-yearly, to my said sons, Douglas and Henry D., during the full term of their natural lives, and from and immediately after their decease, or should they have predeceased my said daughter, Gay Gordon, leaving children or issue him, her or them surviving, then upon the decease of my said daughter, Gay Gordon, without issue, her surviving, to transfer, assign and pay over absolutely to the children or issue of my said sons, Douglas and Henry D., said share, in equal parts, so that, nevertheless, the children or issue of each shall receive only the part of which his, her or their parents had, or should have had, the income, and in default of children or issue of either of the said Douglas or Henry D., to pay said share absolutely to the children or issue of the other or others, so that, nevertheless, the children or issue of each shall receive only the part of which his, her or their parent had, or should have had, the income."

During their joint lives, Douglas and Henry D. each received, since the death of their mother, the income of the one-third of the residue held in trust for them, and, by reason of the death of their sister before her mother, also a one-sixth of the income of the trust created for Gay Gordon.

Henry D. Craig continues to receive the income of the one-third bequeathed to him and the one-half of the one-third bequeathed to his sister, Gay Gordon, and now claims to be entitled to receive, in addition, the one-sixth received by his brother Douglas during his lifetime.

Since the death of Douglas in 1923, Bertha Evelyn, his widow, has received the one-third of the income bequeathed to her husband and now claims, as his widow or executrix, to be entitled to one-half of the income bequeathed to Gay Gordon and received by her husband during his lifetime.

### Craig's Estate.

The will of the testatrix provides: "But should my said daughter, Gay Gordon, die without issue, her surviving, then and in such case to pay said net income derived from said one-third share of said residue in equal proportions quarter-yearly to my said sons, Douglas and Henry D., during the full term of their natural lives." This provision is followed by a further provision in relation to the payment of the shares of residue after the decease of Douglas and Henry D.

The daughter, Gay Gordon, having died before her mother, the payment of the one-third of the net income to the two sons is, under the will, to continue "during the full term of their natural lives," without any words of survivorship or limitation over as to income in case of the death of either without leaving children him surviving.

Douglas having died in 1923, the trust, as to the one-third bequeathed to Gay Gordon, must continue during the natural life of Henry D., and the question for determination then is, who is entitled to have this one-sixth of the income received by Douglas during his natural life?

Neither in the trust created for Douglas or for Henry D. is there any disposition made of income in case of the death of either of the two legatees in remainder without children, him or her surviving.

Henry D. Craig claims the fund as the sole surviving child of the testatrix, but the difficulty with this claim is that the bequest of the income is to Douglas and Henry D. for their natural lives. Nothing is said about the rights of a survivor, and to sustain the claim upon this ground requires the insertion of words not found in the will.

"It is true the Act of March 31, 1812, 5 Sm. Laws, 395, has abolished joint-tenancy in this State, but that act has never been held to prevent a testator creating a joint-tenancy by the express language of his will or by necessary implication:" Jones v. Cable, 114 Pa. 586, 591. The will contains no express language creating a joint-tenancy, and we can find none by necessary implication.

By changing the names of the beneficiaries, the language of Grothe's Estate, 229 Pa. 186, 191, may be applied to the present will: "His right to the income rests wholly on the doctrine of an implied gift or cross-limitation. But this must arise from the language of the will, and unless there is a clear implication that such limitation was intended by the testator, the fund cannot be taken from the heir and disposed of through another channel of distribution. The gift of the income is not to a class, but to the three (two) beneficiaries *nominatim;* neither is it a joint-tenancy with the right of survivorship. . . . Whether intentionally or otherwise, the testatrix did not dispose of the income after the life estate given to the three (two) individuals, and, therefore, there is no reason to suppose that she intended that the survivor should take the whole income until the distribution of the *corpus* of the trust fund, unless the presumptive intention to avoid an intestacy should disclose such purpose. This, however, is not a sufficient reason for implying a gift or a cross-limitation. If it was, no intestacy would ever occur."

In Dillin's Estate, 47 Pa. Superior Ct. 158, 162, the same principle, applied by Judge Penrose, is quoted: "There is no restriction or limitation over, and the beneficial interests last until the termination of the trust, viz., until the death of the survivor of the original *cestui que trusts.* The beneficiaries are equitable tenants *pur autre vie,* and death in the lifetime of the *cestui que vie* does not, of course, terminate their estate, which passes to their assignees, if they have made assignments, and to their personal representatives, if they have not: Little's Appeal, 81 Pa. 190."

Craig's Estate.

After giving the income of the trust for Gay Gordon to her two brothers during the full term of their natural lives, the will provides that, "from and immediately after their decease, or should they have predeceased my said daughter, Gay Gordon, leaving children or issue him, her or them surviving, then upon the decease of my said daughter, Gay Gordon, without issue, her surviving, to transfer, assign and pay over absolutely to the children or issue of my said sons, Douglas and Henry D., said share in equal parts."

It has been repeatedly said that "neither precedent nor rules of construction can overcome the testatrix's expressed intent," but in this will we can find no expressed intent as to the disposition of the income accruing after the death of one of the two sons, without issue, him surviving, there being no gift over of the income upon the death of Douglas during the continuance of the trust. Nor is there anything upon the face of the will to indicate the gift of the income is limited to the life of Douglas; the gift is for their joint lives.

After giving to her two sons during their natural lives the income of the one-third held for Gay Gordon, the testatrix directs after their decease, or should they predecease her daughter, leaving children or issue, him, her or them surviving, the trustee to pay over to the children or issue of her two sons said share in equal parts, the children or issue of each to receive only the part the parents had or should have had the income, and in default of children or issue of either Douglas or Henry, to pay said share to the children or issue of the other, and repeating the direction that the children or issue of each should only receive the part of which the parent had or should have had the income.

While the disposition of this one-third share of the principal is not controlling, it should be carefully considered for the purpose of ascertaining the possible intent of the testatrix. Had Douglas left children him surviving, then, upon the termination of the trust for Gay Gordon, such children would be entitled to receive the part of the principal of which their parent had the income, but nothing is said about their being entitled to receive the income during the interval.

In default of Douglas leaving children or issue, the trustee is directed, after the death of the two sons, to pay this one-sixth part of the principal to the children of Henry. This direction to pay to the children of the other is followed by the repetition of the clause that the children of each shall only receive the part or share of which their parent had the income. The trust is to continue "during the full term of their natural lives," and not until "after their decease" is the trustee authorized to pay over to the children or issue of the two sons said shares in equal parts.

To award to Henry the income of this one-sixth share received by Douglas during life, because the children of Henry will, if they survive their father, receive this part of the principal, is to assume that Henry should now have the income, the very question in dispute, for the reason that, under the will, the children are only entitled to the part of which their parent had or should have had the income, and for the further reason that the will makes no disposition of this portion of the income after the decease of Douglas, either with or without children.

While it is true "we must put ourselves in testator's place in order to determine what he meant by his will (Shaffer's Estate, 262 Pa. 15), but when we have reached that coign of vantage, we must still declare the meaning of the language used and not some other possible but undisclosed purpose: Ludwick's Estate, 269 Pa. 365. Were this not so, verbal wills might

become quite common, despite the requirement of the Wills Act:" Yates's Estate, 281 Pa. 178, 185.

Finding nothing in the language used by the testatrix designating the person who is to receive the income held by the trustee for distribution, we are obliged to turn to precedent and principle for guidance.

In Shuster's Estate, 4 D. & C. 119, the testator bequeaths as follows:

"I bequeath all my real estate and personal property to my only brother, Thomas F. Shuster, during his natural life, at his death the income to go to my niece, Kate M. Haffa, and my nephew, Henry Shuster, children of my deceased brother, David Shuster, share and share alike, at the death of my niece and nephew the entire estate to go to the children of my niece, Kate M. Haffa, absolutely. . . ."

In passing upon the question of distribution of income after the death of Henry Shuster, the Auditing Judge says: "There is no gift over in event of the death of either nephew or niece. When both are dead, the children of Kate M. Haffa take the *corpus*. An intestacy of income is not to be presumed and survivorship in income must be shown by express provision or by necessary implication. In this will there is no express provision for survivorship between the nephew and niece, in that they are to take all of the income, share and share alike: Little's Appeal, 81 Pa. 190, and Harned's Estate, 273 Pa. 237."

In passing upon the exceptions to the adjudication, the court says: "The nephew is dead and Kate M. Haffa, the exceptant, asks that his one-half of the income be awarded to her. There are no words of survivorship, nor is there a gift to a class. The gift over is not at the 'respective' deaths of the niece and nephew of one-half the income or principal, but upon the deaths of both, and then of the 'entire' fund. The gift of the income to the niece and nephew is not limited to their respective lives, but for their joint lives, and, hence, the nephew's share of the income is payable to his administratrix during the life of Kate M. Haffa."

The leading case governing the distribution of income accruing after a life estate without a limitation over during the continuance of the trust is Little's Appeal, 81 Pa. 190, 192.

"The testator (William Agnew) gives the entire income from his estate, consisting wholly of personalty, during the life of his daughter, Elizabeth, or while she shall remain single, to his two daughters, Mrs. Martha J. Little and the said Elizabeth, the former to receive one-third and the latter two-thirds of said income. Mrs. Little is now deceased, leaving a husband and children; Elizabeth is still living and unmarried. The principal of the estate is not to be distributed until after Elizabeth marries or dies. In the meantime, what is to become of the one-third of the income formerly paid to Mrs. Little? It is claimed by the adminstrator of the latter. The court below disallowed this claim, and held, as to the income referred to, that William Agnew died intestate, and it would go to his next of kin.

"It is to be observed that there is no gift over of this income upon the death of Mrs. Little. Nor is it a gift for life; it is a gift *pur autre vie*. It is true it may not last for the life of Elizabeth, by reason of the contingency of her possible marriage. It is, nevertheless, a gift for the life of Elizabeth, subject to being determined by her marriage. Was the gift of this income to Mrs. Little an absolute bequest thereof, and so vested as to go to her legal representatives in case of her death prior to the marriage or death of Elizabeth? We can discover no intent of the testator to die intestate as to this or any other portion of his estate, and no such intention is to be presumed.

### Craig's Estate.

The distribution of the principal is expressly postponed until after the marriage or death of Elizabeth. The right to one-third of the income became vested in Mrs. Little immediately upon the death of Miss (Mr.) Agnew. Did the testator intend that it should be for her life only, and in the event of her death go to his next of kin under the intestate laws? There is certainly nothing upon the face of the will from which such intent can be gathered, and, as we have before observed, no such can be presumed. In the same paragraph of the will in which the above-recited provision occurs the testator says: 'If either of my children should die leaving children living at my death, then I desire and direct that the share of such deceased child shall be given to his or her child or children, as the case may be.' The testator is here speaking of the principal of his estate, and we cannot regard it as controlling the distribution of the income. Yet it is not without weight upon the question of intent. The testator has used no words in this will to show an intent to limit the gift of the income to Mrs. Little for her own life. In the absence of any such express purpose, we must look to the legal effect of the language he has employed. . . . We are of opinion that the gift of this income was a vested interest during the lifetime of the testator's daughter, Elizabeth, or so long as she shall remain unmarried, and that upon the death of Mrs. Little, it passed to her legal representatives for the period above stated."

Sprang's Estate, 49 Pa. Superior Ct. 314, follows Little's Appeal and is said to be ruled by it.

"There is no gift over; nothing which expressly directs where the income is to go before the arrival of the time fixed for the final distribution of the principal if a child should die without issue. This was the ground upon which Little's Appeal, 81 Pa. 190, rested:" Bechtel's Estate, 85 Pa. Superior Ct. 14, 17.

In Murphey's Estate, 21 Dist. R. 1103, after reviewing the cases of Little's Appeal, 81 Pa. 190; Leech's Estate, 228 Pa. 311, and Dillin's Estate, 18 Dist. R. 420, affirmed in 47 Pa. Superior Ct. 158, Judge Gest said: "No limitation over in case he leaves no issue and no express indication of any intention to benefit the survivors of the class in case there should be no issue; and no such intention can be implied, for the gift in favor of the issue of the children who left issue cannot affect the shares of children who died without leaving issue," citing Carstensen's Estate, 196 Pa. 325; Burk's Estate, 21 Dist. R. 357.

Gay Gordon being dead, this one-sixth of the income given Douglas vested in him at the death of his mother under her will, and there being no limitation over, "the beneficial interests last until the termination of the trust, viz., until the death of the survivor of the original *cestui que trusts*. The beneficiaries are equitable tenants *pur autre vie*, and death in the lifetime of the *cestui que vie* does not, of course, terminate their estate, which passes to their assignees, if they have made assignments, and to their personal representatives if they have not," as held by Judge Penrose. Citing Little's Appeal, 81 Pa. 190. The above is cited with approval in Harned's Estate, 54 Pa. Superior Ct. 47, 50, followed in 273 Pa. 237, and in Dillin's Estate, 47 Pa. Superior Ct. 158, 162.

The funds in the hands of the trustee for distribution are, therefore, awarded to the executrix of the estate of Douglas Craig, deceased.

And now, May 19, 1927, the rule granted March 8, 1926, in the above-stated case is made absolute, and the Mauch Chunk Trust Company, trustee under the will of Belle D. Craig, is authorized and directed to pay Bertha Evelyn Craig, executrix under the will of Douglas Craig, deceased, the sum of

Craig's Estate.

$1989.04, with any interest due thereon, being the income in the hands of the trustee reserved, as per account filed, and held for the interest of Gay Gordon Craig under the will of Belle D. Craig, deceased.